UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Yeonhye Jeon,<br><br>                              Plaintiff,<br><br>      v.<br><br>Hyundai Marine & Fire Insurance Co., Ltd.,<br><br>                              Defendant, | Case No. 2:26-cv-04581<br><br><br>**COMPLAINT**<br><br><br>**JURY DEMAND** |

Plaintiff Yeonhye Jeon ("Plaintiff"), by and through her undersigned counsel, as and for her Complaint in this action against Hyundai Marine & Fire Insurance Co., Ltd., alleges as follows:

## INTRODUCTION

1.     Plaintiff brings this action against Hyundai Marine & Fire Insurance Co., Ltd., ( "Defendant" or "Hyundai") for violations of the Fair Labor Standards Act ("FLSA" – 29 U.S.C. § 201 *et seq.*), the New Jersey Wage and Hour Law ("NJWHL" – N.J.S.A. 34:11-56a *et seq.*), Title VII of the Civil Rights Acts of 1964 ("Title VII" – 42 U.S.C. Section 2000e *et seq*), and the New Jersey Law Against Discrimination ("NJ LAD" – N.J.S.A. 10:5-2 *et seq*). As a direct and proximate consequence of Defendant's unlawful actions, Plaintiff has suffered damages and seeks all available legal and equitable relief as set forth herein.

## JURISDICTION AND VENUE

2.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under FLSA

and Title VII.   The Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

4.      Plaintiff is proceeding herein (in part) under Title VII and has properly exhausted her administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and receiving a notice of dismissal and/or right to sue letter from the EEOC.

## PARTIES

5.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.      Plaintiff Yeonhye Jeon is an adult who currently resides in Ontario, Canada.

7.      Plaintiff is a Korean-Canadian whose national origin stems from Korea.

8.      Plaintiff has worked at Samsung Electronics America, Inc., for approximately 3 years.

9.      Hyundai Marine & Fire Insurance Co., Ltd. is a corporation doing business in the State of New Jersey, with service of process available at 300 Sylvan Avenue, Suite 105, Englewood Cliffs, NJ 07632.

10.     At all relevant times, Defendant has met the definition of an "employer" under all applicable statutes.

11.     Hyundai hired, paid, and exercised control over the terms, conditions, and privileges of Plaintiff's employment including but not limited to her compensation, schedule, job duties, and workplace conduct.

12. At all relevant times, Helen Yu was a Plaintiff's direct supervisor and a managerial employee of Defendant.

13. At all relevant times, Defendant acted by and through its agents, servants, and employees, each of whom acted within the course and scope of its employment with and for the benefit of Defendant.

## FACTUAL BACKGROUND

14. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

15. Plaintiff was employed by Defendant from approximately September 2022 through July 2025.

**Unpaid Overtime Wage**

16. Throughout Plaintiff's employment, she was paid on a fixed salary regardless of her actual number of hours worked in a given workweek.

17. Plaintiff regularly worked in excess of 40 hours per week. For example, Plaintiff frequently worked approximately 42, 44, and at times up to 52 hours in a workweek.

18. Despite working more than 40 hours in a workweek, Plaintiff was not paid overtime compensation at a rate of one and one-half times her regular rate of pay for hours worked over 40.

19. Plaintiff's primary job duties did not fall within any exemption to the overtime requirements under the applicable statutes.

20. Defendant's failure to pay overtime was knowing, intentional, willful, malicious, and in reckless disregard of applicable wage-and-hour laws.

**Discrimination and Disparate Treatments**

21.     About a year after Plaintiff began working for Defendant, an incident concerning a lunch budget triggered heightened hostility from Ms. Yu toward Plaintiff.

22.     Plaintiff and Ms. Yu exceeded the lunch budget by approximately five dollars after receiving assurance from a Senior Manager, and Plaintiff did not disclose that issue to anyone else.

23.     Ms. Yu later learned that an Assistant Manager was aware of the overspending and, despite Plaintiff's explanation that she had not told anyone about it, aggressively confronted Plaintiff and wrongly accused Plaintiff of disclosing internal information.

24.     Even after the Assistant Manager and Senior Manager clarified the situation, Ms. Yu continued to direct anger and criticism at Plaintiff.

25.     Between March and April 2025, a Deputy Team Leader told Plaintiff that, absent a large accident, she could report an approximate loss-ratio without an official SOA.

26.     In accordance with that instruction, Plaintiff reported approximated loss-ratio without official OSA and clearly communicated that the number was approximate and could be edited.

27.     In May 2025, Ms. Yu suddenly sent a message in a group chat stating that enterprises require a SOA and that it must be prepared "on time" going forward.

28.     The Deputy Team Leader was part of that group chat but did not correct the record or otherwise intervene.

29.     The public reprimand portrayed Plaintiff as incompetent and unable to keep up with deadlines.

30.     As a result of that public reprimand, Plaintiff worked until approximately 3:00 a.m. the following day, despite being scheduled off for her birthday, in order to submit the SOA.

31.    Also in May 2025, while Plaintiff was on vacation, Ms. Yu sent Plaintiff multiple demeaning comments regarding an insurance company, Inbursa, including:

    A.    "How can you not know this company when you worked in the industry for three years";

    B.    "This is all your mistakes"; and

    C.    Are you not thinking?"

32.    These comments demeaned Plaintiff and caused Plaintiff to belittle herself.

33.    During the remainder of her vacation, Plaintiff felt unable to stay away from her computer because she was anxious that Ms. Yu would continue contacting er with further criticism.

34.    Ms. Yu repeatedly singled Plaintiff our for unfair criticism and humiliating remarks that she did not direct toward non-Korean employees.

35.    On other occasions, when Plaintiff sent emails, Ms. Yu made disparaging comments such as, "Are you just rushing to get off work?" and "Are you going to take the reasonability if renewal does not happen?"

36.    When Plaintiff asked questions about matters she had not previously encountered, Ms. Yu responded with comments such as, "You've worked in insurance for three years and don't even know this?" and unfavorably compared Plaintiff to non-Korean coworkers by saying they "would have done better."

37.    Ms. Yu also compared Plaintiff to other employees with similar age and stated that they "would have done better."

38.     Ms. Yu failed to provide any meaningful instruction yet publicly reprimanded Plaintiff, leaving Plaintiff to perform her work without adequate guidance while feeling belittled and undermined.

39.     Ms. Yu frequently blamed Plaintiff's personality ability for the mistreatment. For example, Ms. Yu said "I speak harshly because you are bad at your job. It's not my fault," and "Being overly conscious is your own personality. I do not have anything to do with that."

40.     When Ms. Yu made errors, those mistakes were corrected quietly. When Plaintiff made mistakes, however minor, Ms. Yu publicly accused Plaintiff of negligence and incompetence.

41.     Unlike other employees, Plaintiff was subject to excessive micromanagement by Ms. Yu.

42.     Ms. Yu required Plaintiff to copy her on every email Plaintiff send and, when Plaintiff did not do so, Ms. Yu stated, "Who told you to send this?" and "Just stay still without doing anything."

43.     Ms. Yu prohibited Plaintiff from sending emails or messages without her prior approval.

44.     Ms. Yu required Plaintiff to report every meeting including what was discussed, with whom Plaintiff spoke, and what tasks Plaintiff was assigned, and even required Plaintiff to disclose private conversations.

45.     Ms. Yu required Plaintiff to submit a detailed daily worklog which was plainly beyond the scope of her position.

46.     As a result of the continuing mistreatment, Plaintiff began psychiatric treatment in or about May 2025.

47. Plaintiff experienced anxiety and depression and was prescribed tranquilizer and antidepressant.

48. Plaintiff's condition became so severe that a medical provider recommended that she leave the company.

49. Plaintiff complained to Defendant's upper management and/or Human Resources about the discriminatory and retaliatory treatment described above.

50. Defendant, however, failed to stop, remedy, or investigate the conduct that led to Plaintiffs complaint(s).

51. Instead, after Plaintiff complained, Defendant subjected Plaintiff to increased hostility and animosity.

52. The discriminatory, hostile, and retaliatory conditions became so intolerable, and Plaintiff had no choice but to resign from her employment in July 2025.

53. Plaintiff filed a Charge of Discrimination with the EEOC on or about October 31, 2025.

54. Plaintiff's EEOC Charge of Discrimination was sent to Defendant.

55. Plaintiff believes and therefore avers that she was subjected to a hostile work environment and less treated favorably because of her national origin and/or in retaliation for her complaints.

56. As a result of the foregoing, Plaintiff suffered economic loss, emotional distress, humiliation, and other damages.

**COUNT I**
**Violations of the Fair Labor Standards Act ("FLSA")**
**[1] Failure to Pay Overtime**

57.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

58.    At all relevant times, Defendant was an employer within the meaning of the FLSA.

59.    At all relevant times, Defendant was an enterprise engaged in commerce within the meaning of the FLSA.

60.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a workweek longer than forty hours unless such employee receives compensation for employment in excess of forty hours at a rate not less than one and one-half times the regular rate at which she is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

61.    At all relevant times, Plaintiff was a non-exempt employee.

62.    Plaintiff regularly worked more than 40 hours in a workweek.

63.    Defendant failed to compensate Plaintiff at one and one-half times her regular rate of pay for hours worked in excess of 40 hours in a workweek.

64.    Defendant's failure to pay overtime compensation to Plaintiff violated the FLSA.

65.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of her unpaid overtime compensation, and an additional equal amount as liquidated damages. 29 U.S.C. § 216(b).

66.    Defendant knowingly, intentionally, willfully, and maliciously disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff the statutory overtime rate of time and one half of all hours worked in excess of forty per week when they

knew or should have known such was due and that failing to do so would financially injure Plaintiff.

67.     As a result of Defendant's FLSA violations, Plaintiff is entitled to recover her unpaid overtime wages, liquidated damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## COUNT II
### Violations of New Jersey Wage and Hour Law ("NJWHL")
### [1] Failure to Pay Overtime

68.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

69.     At all relevant times, Defendant was an employer within the meaning of the NJWHL.

70.     The NJWHL requires employers to pay non-exempt employees overtime compensation of one and one-half times the employee's regular rate of pay for all hours worked in excess of forty in a workweek.

71.     At all relevant times, Plaintiff was a non-exempt employee.

72.     An employer who fails to pay their employees' wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to two hundred percent thereafter under the New Jersey Wage and Hour Law, 34:11-56, 58.

73.     At all times relevant herein, Defendant had a policy and practice of refusing to pay overtime compensation to Plaintiff at one and one-half times the hourly rate of Plaintiff.

74.     Defendant's failure to pay Plaintiff her overtime pay violated the NJWHL.

75.     Defendant's failure to pay Plaintiff was willful and was not in good faith.

76. As a result of Defendant's NJWHL violations, Plaintiff is entitled to recover her unpaid overtime wages, liquidated damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

**COUNT III**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**[1] National Origin Discrimination**

77. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

78. Plaintiff is a member of a protected class based on her national origin.

79. Defendant's conduct during Plaintiff's employment as alleged at length herein deprived Plaintiff of equal employment opportunities and otherwise adversely affected her status as an employee because of her national origin.

80. From the outset since Plaintiff joined Defendant, Defendant engaged in discrimination based on national origin, treating Plaintiff less favorably than similarly situated employees who were not Korean, in violation of Title VII of the Civil Rights Act of 1964.

81. Plaintiff would not have been subjected to discriminatory treatment by Defendant but for her national origin.

82. Defendant's unlawful employment practices were conducted intentionally, with malice or with reckless indifference to Plaintiff's federally protected rights.

**COUNT IV**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**[2] Hostile Work Environment**

83. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

84. The hostile work environment created by Defendant's national origin discriminations, retaliations, and disparate treatments were severe and/or pervasive and violated Plaintiff's right under Title VII.

85. Defendant knew or should have known of the harassment and failed to take prompt and effective remedial action.

86. As a direct result of the hostile work environment that existed during Plaintiff's employment with Defendant, Plaintiff sustained conscious pain and suffering, great mental distress, shock, fright, and humiliation.

**COUNT V**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**[3] Retaliation**

87. Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if set forth fully herein.

88. Plaintiff complained and commented of the aforesaid discrimination and unfair treatment to Defendant's upper management and/or Human Resources

89. In response to Plaintiff's complaint, Defendant failed to address or remedy the ongoing discriminatory and retaliatory conditions and/or sexual harassments, but rather Defendant's upper management and HR department subjected him to increased hostility and animosity, instead of meaningfully investigating Plaintiff's complaints.

90. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered damages including but not limited to lost compensation, emotional distress, humiliation, and other damages.

**COUNT VI**

**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**[4] Constructive Discharge**

91.    Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if set forth fully herein.

92.    Defendant deliberately rendered Plaintiff's working conditions intolerable that a reasonable person in Plaintiff's position would have felt compelled to leave employment.

93.    Plaintiff resigned because of intolerable working conditions.

94.    As a result of Defendant's unlawful actions, Plaintiff was constructively discharged from her employment.

**COUNT VII**
**Violations of the New Jersey Law Against Discrimination ("NJ LAD")**
**([1] National Origin Discrimination; [2] Hostile Work Environment; [3] Retaliation; [4] Constructive Discharge)**

95.    Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if set forth fully herein.

96.    Plaintiff re-asserts and re-alleges each and every allegation as set forth in COUNT III through COUNT VI of the instant Civil Action Complaint, as such actions constitute identical violations of the NJ LAD.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter an order providing that:

a.  Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom(s) of discriminating, retaliating against employees, fostering a hostile work environment, or constructively discharging employees. Defendant shall also be ordered to promulgate and enforce an effective policy against such

discrimination, retaliation, hostile work conditions, and constructive discharges, ensuring strict adherence moving forward.

b. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay (absent reinstatement), salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered the aforesaid unlawful actions at the hands of Defendant until the date of verdict;

c. Plaintiff is to be awarded punitive or liquidated damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct, and to deter Defendant or other employers from engaging in such misconduct in the future;

d. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress and pain and suffering);

e. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

f. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

g. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues.

Dated: April 27, 2026

          /s/ Ryan Kim
          Ryan J. Kim

          Ryan J. Kim, Esq.
          Ryan Kim Law, P.C.
          222 Bruce Reynolds Blvd. Suite 490
          Fort Lee, NJ 07024
          ryan@RyanKimLaw.com